IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PNC FINANCIAL SERVICES, GROUP, INC, *et al*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 13-331 |
| v. | ) ) | Judge Cathy Bissoon |
| HOUSTON CASUALTY, COMPANY, *et al*, | ) ) ) | Magistrate Judge Maureen P. Kelly |
| Defendants. | ) | |

## MEMORANDUM ORDER

### I. MEMORANDUM

This case was referred to United States Magistrate Judge Maureen P. Kelly for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(l)(A) and (B), and Rules 72.C, 72.D and 72.G of the Local Rules for Magistrates.

On May 21, 2014, the Magistrate Judge issued a Report and Recommendation (Doc. 61), which recommended that Plaintiffs' Motion for Judgment on the Pleadings (Doc. 47) be granted and Defendants' Motion for Judgment on the Pleadings (Doc. 50) be denied. Service of the Report and Recommendation was made on the parties, and Defendants timely filed objections (Doc. 62).

After a *de novo* review of the record, the Court adopts the Report in part and rejects the Report in part. Specifically, the Court adopts Sections A ("Procedural Background"); B ("Standard of Review"); and C ("Factual Background") of the Report as the opinion of the District Court and incorporates those sections as if fully restated herein. However, for the reasons stated below, the Court does not adopt the remainder of the Report, and instead finds the following:

1

**DISCUSSION:**

    **1. Policy Construction**

Under Pennsylvania law, the "interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008) (quoting Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007)). "When the language of the policy is clear and unambiguous, [the Court] must give effect to the language." Id. However, "where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Id. (quoting Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)). "Contractual language is ambiguous if 'it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" Id. (quoting Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986)).

"The burden is on the insured to establish coverage under an insurance policy." Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir. 2001) (citing Erie Ins. Exchange v. Transamerica Ins. Co., 533 A.2d 1363, 1366–67 (Pa. 1987)). However, it is the insurer "that bears the burden of establishing the applicability of an exclusion in an insurance contract, and exclusions are always strictly construed against the insurer and in favor of the insured." Id. (internal citations omitted).

Here, PNC seeks to obtain a declaration of its right to obtain coverage for defense and indemnity payments under the HCC and Axis policies, and also asserts breach of contract claims against the Insurers for their failure to make such payments. As a preliminary matter, the Court agrees with the Magistrate Judge that PNC has met its initial burden to establish coverage for the underlying claims. See R&R (Doc. 61) at 20. However, the Court disagrees with the Magistrate

Judge's reading of the exceptions to the definition of **Damages**. Instead, the Court agrees with the Insurers that, given the nature of the policy and the language of the **Damages** definition, the exceptions <u>must</u> be read to apply to "third party" losses. <u>See</u> Def.'s Objections (Doc. 62) at 7. Accordingly, the Court will now turn to the Insurers' original arguments as to why PNC is not entitled to coverage for the settlements.

### 2. The Fee Exception

The Insurers' first and strongest argument against coverage for the overdraft settlements is that the settlements fall within the "Fee Exception" to **Damages**. The relevant policy provision is as follows:

> The Underwriter will pay on behalf of the Insured: (A) all **Loss** for which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against the **Insured** during the **Policy Period** or, if applicable, the **Discovery Period**, for a **Wrongful Act** which takes place during or prior to the **Policy Period**; provided, however, the **Insured** shall report such **Claim** to the **Underwriter** as soon as practicable, but in no event later than 90 days after termination of the **Policy Period** or, if applicable, the **Discovery Period**;

**Loss** is then defined as "**Claims Expenses** and **Damages**" and **Damages** are further defined as follows:

> (E) **Damages** means a judgment, award, surcharge or settlement as a result of a **Claim** and any award of pre- and post-judgment interest, attorneys' fees and costs. **Damages** shall not include any:
>
> > (5) <u>fees</u>, commissions or charges for **Professional Services** paid or payable to an **Insured** [the "Fee Exception"];

The Insurers argue that the settlements returned overdraft <u>fees</u> to class members; and therefore, they clearly fall within the Fee Exception to **Damages**. The Court agrees that at least a portion of the settlements fall within the Fee Exception to **Damages**, namely those portions

3

being paid towards the individual class members, because those payments constitute a refund of "fees … for **Professional Services** paid … to an **Insured**." However, the Court finds that the remainder of the money PNC is obligated to pay under the settlements is not excluded under the Fee Exception and constitute recoverable **Damages** under the policies.

### A. The Refunds of Overdraft Fees Fall Within the Fee Exception

The Court finds that while the Plaintiffs in both Trombley and the MDL brought several different types of claims, and sought relief in several different forms, the essence of the claims dealt with PNC's policy of charging overdraft fees.[1] Moreover, contrary to PNC's assertion that the settlement constituted "compensatory" relief rather than "restitution," it is clear that both settlement agreements were drafted to reimburse or refund class members with the overdraft fees that the class members had previously paid to PNC. As such, the Court finds that there is no other way for the Court to construe the Fee Exception than to encompass the settlements at issue here. For example, the Trombley settlement specifically excludes individuals from the class if their overdraft fees had already been "reversed, refunded, or returned" by PNC. JA-612. The agreement provides that a "Settlement Class Member shall be eligible to claim compensation for each Overdraft Fee that the Settlement Class Member incurred during any two calendar months during the Class Period." JA-622 (emphasis added). Each class member who submits a claim form then receives $36 for each Overdraft Fee. JA-624. Likewise, the distribution from the MDL settlement fund to individual class members is determined using a formula to calculate the dollar amount of each additional overdraft fee that resulted as a result of PNC's high-to-low posting policy. JA-759.

---

[1] See Part C of the Magistrate Judge's Report for a detailed description of the claims and types of relief sought in Trombley and the MDL.

The Court also disagrees with the Magistrate Judge's finding that applying the "Fee Exception" to the Trombley and MDL settlements would render the policy illusory and the Personal Profit Exclusion (the "PPE") superfluous.  The PPE provides that:

> The Underwriter shall not be liable to make any payment for **Loss** on account of a **Claim**:
>
> (C) brought about or contributed to in fact by any:
>
>> (2) profit or remuneration gained by any **Insured** to which such **Insured** is not legally entitled; as determined by a final adjudication in the underlying action.

The Court agrees with the Insurers' assertion that the PPE is much broader than the Fee Exception.  See Def.'s Objections (Doc. 62) at 11.  First, the PPE excludes payment for **Loss**, and therefore would exclude coverage of both **Damages** and **Claims Expenses**, while the Fee Exception would only exclude recovery of **Damages**.  Moreover, the PPE captures any "profit or remuneration" that fits into the exclusion, and thus reaches beyond just "fees, commissions, or charges for **Professional Services**."  Therefore, reading the Fee Exception to apply to the settlement payments here would not render the policy illusory or the PPE superfluous.[2]

While PNC argues the settlements cannot fall within the Fee Exception because the Court cannot determine that the settlement constitutes a refund of "fees," the Court disagrees.  PNC attempts to create ambiguity in the policy by pointing to what damages PNC could have been ordered to pay had the case gone to trial; however, PNC's argument is contrary to the clear terms of the policy.  The Fee Exception does not indicate that there must be a final adjudication in order for it to apply.  To the contrary, a final adjudication is explicitly required for other

---

[2] To the contrary, the Court finds that to read the policy to cover the entirety of the settlements payments here would effectively render the Fee Exception superfluous.  For example, if the Fee Exception could only be read to apply when there was a final adjudication regarding the return of fees, then indemnity for the **Claims Expenses** and **Damages** would already be excluded by the PPE, and the Fee Exception would be unnecessary.

exclusions in the policy, such as the PPE.  Therefore, the Court cannot read the Fee Exception to require a final adjudication without distorting the plain language of the contract.  See Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am., 581 F. Supp. 2d 677, 68-90 (W.D. Pa. 2008) (quoting O'Connor-Kohler v. United Services Auto Ass'n., 883 A.2d 673, 679 (Pa. Super. 2005)) ("The Court cannot distort the meaning of the language or resort to a strained contrivance in order to find ambiguity.").  Moreover, other courts, including those in Pennsylvania, have not hesitated to look to the nature of the underlying claims to determine whether a settlement payment falls within an exclusion to an insurance policy.[3]

### B. Attorneys' Fees and Costs are Not Excluded Under the Fee Exception.

While the Court finds that the Insurers have met their burden of establishing that the claims paid to each individual class member in the Trombley and MDL settlements fall within the Fee Exception to **Damages**, the Court finds that the Insurers have not met their burden of showing that the entirety of the settlement funds constitute "fees" that are excluded from the definition of **Damages**.[4]  The definition of **Damages** in the policy specifically includes "a judgment, award, surcharge, or settlement as a result of a Claim and any award of pre- and post-judgment interest, attorneys' fees and costs."  The Fee Exception to **Damages**, however, only provides that "**Damages** shall not include any: fees, commissions or charges for **Professional**

---

[3] See e.g., Alexander v. CNA Ins. Co., 657 A.2d 1282, 1285 (Pa. Super. Ct. 1995) (looking to the allegations in the complaint to determine whether a settlement fell within the scope of an exclusion); Chubb Custom Ins. Co. v. Grange Mut. Cas. Co., 2011 WL 4543896, at *12 (S.D. Ohio Sept. 29, 2011) (looking at the "essence" of the wrongful conduct alleged in the underlying actions to determine whether the settlements fell within a policy exclusion).

[4] The Court notes that the policy exclusions here are atypical in that they exclude from coverage a particular type of damages, as opposed to excluding coverage for a particular type of claim or dispute.  See, e.g., Fidelity Bank v. Chartis Specialty Ins. Co., 2013 WL 4039414, at *2 (N.D. Ga. Aug. 7, 2013) (insurance policy excluded coverage for "any dispute involving fees, commissions or other charges for any Professional Services"); Ticketmaster, LLC v. Illinois Union Ins. Co., 524 Fed. Appx. 329, 330 (9th Cir. 2013) (insurance policy did not apply to any claim "based on or arising out of … any dispute involving fees, expenses or costs paid to or charged by the Insured.").

**Services** paid or payable to an **Insured**." The Insurers have not cited, and the Court has not found, any policy provision that would exclude the portion of the settlements allocated to attorneys' fees and costs, rather than those portions allocated to the reimbursement of overdraft fees. As such, this broad definition of **Damages** does not exclude coverage of the portions of the settlements allocated to such attorneys' fees and costs, simply because some of the **Damages** resulting from the **Claim** are excluded under the Fee Exception. See UnitedHealth Grp. Inc. v. Hiscox Dedicated Corporate Member Ltd., 2010 WL 550991, at *10-12 (D. Minn. Feb. 9, 2010) (finding that while all of the substantive claims against the insured were excluded from coverage, "nothing in the definition of 'Damages' exclude[d] a claim for attorney's fees from being part of a judgment or settlement," and therefore the portion of the settlement attributable to the claim for attorney's fees was covered absent an applicable exclusion). Therefore, even though the amounts of the settlements allocated to individual class members fall within the Fee Exception to **Damages**, the Court finds that other costs that PNC is required to pay under the settlement agreement, such as attorneys' fees and costs that are paid out of the settlement funds, do not fall within the Fee Exception; and are therefore recoverable **Damages**.

Both the Trombley and the MDL settlements clearly allocate portions of the settlement funds towards these attorneys' fees and costs. For example, in the Trombley Action, the $12 Million settlement fund allocates (1) a $3 Million attorneys' fee award to class counsel; (2) $77,857.05 towards costs and expenses; and (3) $15,000 towards incentive fees for the representative plaintiffs.[5] JA-724. As such, at least $3,092,857.05 of the Trombley settlement fund is <u>not</u> excluded under the Fee Exception to **Damages**. Likewise, the MDL settlement resulted in a $90 Million Settlement fund, and allocates: (1) a $27 Million attorneys' fee award

---

[5] The Court finds that incentive awards are clearly not "fees… for **Professional Services** … paid or payable to the **Insured**," and therefore these portions of the settlement funds do not fall into the Fee Exception to **Damages**.

to class counsel; (2) $183,301.58 for reimbursement of costs; and (3) and $30,000 in plaintiffs' incentive awards. JA-1119.  As such, at least $27,213,301.58 of the MDL settlement fund is not excluded under the Fee Exception to **Damages**.   Accordingly, the two settlements have collectively resulted in at least $30,306,158.63 of recoverable **Damages**.

In light of this, PNC, regardless of the amounts of **Claims Expenses** or other recoverable **Damages** for these actions, has already incurred more than $25 Million in **Loss**.  Thus, PNC has met its $25 Million retention, which triggers coverage from the HCC Policy.  However, because the parties have not provided adequate detailing of all **Claims Expenses** or **Damages** paid by PNC, the Court's analysis can go no further at this point.  Therefore, an issue of fact exists with regards to PNC's claims against the Insurers.

**CONCLUSION:**

In conclusion, the Court finds that the Fee Exception to **Damages** excludes portions of the Trombley and MDL settlements that are paid to the claims of individual class members.[6] However, the Court finds that the Fee Exception to **Damages** does not extend to the entirety of the settlements, and therefore other costs, such as the particular portions of the settlement funds specifically allocated to attorneys' fees, costs, and incentive awards, still fall within the definition of **Damages**.  As such, the Court finds it unnecessary to address whether the settlements fall under the "Loan/Credit" Exception,[7] or whether coverage for such settlements

---

[6] The Court can envision that PNC will argue that any unclaimed settlement proceeds are not "fees," because they will go to a non-profit organization.  PNC is forewarned that the Court finds that these amounts do not fall outside the Fee Exception simply by virtue of going unclaimed.  They were intended to be a recoupment of overdraft fees -- happenstance does not magically transform them into something else.

[7] Regardless of whether the settlement funds constitute "principal, interest or other monies either paid, accrued or due an Insured as the result of any loan, lease or extension of credit," the attorneys' fees and costs would still fall outside of this exception for the same reasons that they fall outside of the Fee Exception.

would be contrary to public policy.[8]  However, issues of fact remain, including whether the Axis policy has been triggered, and therefore neither party is entitled to Judgment on the Pleadings at this time.

## II. ORDER

For the reasons stated above, the Court finds the following as a matter of law:

(1) The portions of the Trombley and MDL settlements paid towards individual class members' claims fall under the Fee Exception to **Damages**;

(2) The amount of **Damages** in the Trombley and MDL settlements, including attorneys' fees, costs, and incentive fees, amount to at least $30,306,158.63; and

(3)   PNC has therefore paid **Damages** in connection with the Trombley and MDL settlements in an amount in excess of its $25 Million retention, and thus triggered coverage under the HCC Policy.

Consistent with the foregoing, the Magistrate Judge's Report and Recommendation (**Doc. 61**) is **ADOPTED IN PART**.  Defendants' Motion for Judgment on the Pleadings (**Doc. 50**) and Plaintiffs' Motion for Judgment on the Pleadings (**Doc. 47**) are both hereby **GRANTED IN PART and DENIED IN PART**.  The Motions are granted to the extent that the parties sought declarations consistent with the Court's findings above, and denied in all other respects.

IT IS SO ORDERED.

---

[8] Since the Court has found that the portion of the settlement fees constituting a refund of overdraft fees are excluded from the definition of **Damages**, the Court cannot see how PNC received a "windfall" by collecting proceeds only for attorneys' fees and costs, and therefore how the Insurers' public policy argument could possibly prevail in this circumstance. Moreover, had the Insurers wished to exclude coverage for attorneys' fees and costs associated with this type of settlement, they certainly could have done so.  Given the nature of the policy at hand -- in which "fees" are excluded from the definition of **Damages**, and the Personal Profit Exclusion only applies when there is a final adjudication in the underlying action -- the Court is unaware of any case law suggesting that there is a public policy that would direct that the Insurers should not be responsible for these attorneys' fees and costs for which they specifically assumed responsibility.

June 24, 2014						s/Cathy Bissoon
							Cathy Bissoon
							United States District Judge

cc (via ECF email notification):

All Counsel of Record