# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THE PNC FINANCIAL SERVICES GROUP,  )
INC. and PNC BANK, N.A., Individually and as  )
Successor in Interest to NATIONAL CITY  )
BANK,  )
    )
    Plaintiffs,  )    Civil Case No. 2:13-cv-00331-CB-MPK
    )
    v.  )    *Electronically Filed*
    )
HOUSTON CASUALTY COMPANY and  )
AXIS INSURANCE COMPANY,  )
    )
    Defendants.  )

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION OF <u>MEMORANDUM ORDER DATED JUNE 24, 2014</u>

Douglas E. Cameron
Pa. I.D. No. 41644
Courtney C.T. Horrigan
Pa. I.D. No. 70427
Robert H. Owen
Pa. I.D. No. 91406
Caitlin R. Garber
Pa. I.D. No. 311321

Reed Smith LLP
(Firm I.D. No. 234)
225 Fifth Avenue
Pittsburgh, PA 15222
412-288-3131
Fax: 412-288-3063
dcameron@reedsmith.com
chorrigan@reedsmith.com

*Counsel for Plaintiffs The PNC Financial Services Group, Inc. and PNC Bank, N.A., Individually and as Successor In Interest to National City Bank*

## Table of Contents

Page

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     LEGAL STANDARD.................................................................................... 2

III.    ARGUMENT ........................................................................................... 3

      A.      The Order Rewrites The Fee Exception By Inserting New Terms While
          Simultaneously Failing To Give Effect To All Language Within The
          Exception. ........................................................................................ 3

      B.      The Order Erroneously Adopts An Interpretation That Creates An
          Irreconcilable Conflict Between The Fee Exception And The Personal
          Profit Exclusion. ................................................................................. 8

      C.      The Court's Ruling That The *Trombley* And MDL Settlements Constitute
          A "Reimbursement" or "Refund" of "Fees" Is Procedurally Improper And
          Is Not Supported By The Record. ........................................................... 11

      D.      The Order Fails To Apply Well-Settled Pennsylvania Law Regarding The
          Interpretation Of Insurance Contracts. ................................................... 13

IV.     CONCLUSION ...................................................................................... 16

<u>**Table of Authorities**</u>

**Page**

**Cases**

*401 Fourth St., Inc. v. Investors Ins. Grp.*,
   823 A.2d 177 (Pa. Super. Ct. 2003), *aff'd*, 879 A.2d 166 (Pa. 2005)........................................ 6

*Abraxas Group, Inc. v. Guaranty Nat'l Ins. Co.*,
   648 F. Supp. 304 (W.D. Pa. 1986)........................................................................................... 5

*AT&T v. Clarendon Am. Ins. Co.*,
   2008 WL 2583007 (Del. Super. Ct. Feb. 11, 2008)........................................................ 12, 13

*Bernalillo County Deputy Sherriffs Ass'n v. County of Bernalillo*,
   845 P.2d 789 (N.M. 1992) ....................................................................................................... 7

*Blocker v. Aetna Cas. & Sur. Co.*,
   332 A.2d 476 (Pa. Super. Ct. 1975).................................................................................... 3, 6

*Bragen v. Hudson County News Co.*,
   278 F.2d 615 (3d Cir. 1960) .................................................................................................... 3

*Brooks v. Kyler*,
   204 F.3d 102 (3d Cir. 2000) ............................................................................................. 3, 11

*Butterfield v. Giuntoli*,
   670 A.2d 646 (Pa. Super. Ct. 1995).................................................................................. 8, 10

*Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*,
   2011 WL 4543896 (S.D. Ohio Sept. 29, 2011) .............................................................. 12, 13

*Estate of Sanchez v. Colonial Penn Ins.*,
   532 A.2d 857 (Pa. Super. Ct. 1987)........................................................................................ 5

*First Community Bancshares v. St. Paul Mercury Ins. Co.*,
   No. 6:12-cv-00193, slip op. (W.D. Tex. Dec. 18, 2012) ........................................................ 6

*Gardner State Farm Fire & Cas. Co.*,
   544 F.3d 553 (3d Cir. 2008) .................................................................................................. 14

*Globe Indem. Co. v. Mohenis Servs.*,
   1998 WL 409026 (E.D. Pa. June 29, 1998)........................................................................... 14

*Gould, Inc. v. Arkwright Mut. Ins. Co.*,
   829 F. Supp. 722 (M.D. Pa. 1993).......................................................................................... 5

*Great N. Ins. Co. v. Greenwich Ins. Co.*,
   2008 WL 2048354 (W.D. Pa. May 12, 2008).................................................................. 10-11

*Heebner v. Nationwide Ins. Enter.*,
   818 F. Supp. 2d 853 (E.D. Pa. 2011) ...................................................................................... 8

*In re Pharmacy Benefit Managers Antitrust Litig.*,
   582 F.3d 432 (3d Cir. 2009) .................................................................................................... 2

*Little v. MGIC Indem. Corp.*,
   836 F.2d 789 (3d Cir. 1987) .............................................................................................. 14-15

*Marcinak v. Southeastern Greene School Dist.*,
    544 A.2d 1025 (Pa. Super. Ct. 1988)........................................................ 3

*Max's Seafood Cafe v. Quinteros*,
    176 F.3d 669 (3d Cir. 1999) .................................................................. 2

*Mutual of Omaha Ins. Co. v. Bosses*,
    237 A.2d 218 (Pa. 1968)........................................................................ 5

*Nationwide Mut. Ins. Co. v. Cosenza*,
    258 F.3d 197 (3d Cir. 2001) .................................................................. 15

*PBS Coal, Inc. v. Hardhat Min., Inc.*,
    632 A.2d 903 (Pa. Super. Ct. 1993)........................................................ 9

*Petrochko v. Nationwide Mut. Ins. Co.*
    15 Pa. D. & C. 5th 312 (Pa. Com. Pl. Aug. 27, 2010),
    *aff'd sub nom.*, 38 A.3d 917 (Pa. Super. Ct. 2011) ............................. 3, 6

*Piekutowski v. Twp. of Plains*,
    2012 WL 8666731 (Pa. Commw. Ct. Jan. 23, 2012)................................ 6

*Reliance Ins. Co. v. Moessner*,
    121 F.3d 895 (3d Cir. 1997) .................................................................. 10

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008) .................................................................. 11

*Scirex Corp v. Fed. Ins. Co.*,
    313 F.3d 841 (3d Cir. 2002) .............................................................. 10, 11

*Sloan & Co. v. Liberty Mut. Ins. Co.*,
    2008 WL 3832519 (E.D. Pa. Aug. 15, 2008) .......................................... 8

*SRC Holding Corp. v. Exec. Risk Indemn., Inc.*,
    545 F.3d 661 (8th Cir. 2008) ................................................................. 8

*Swarner v. Mutual Ben. Group*,
    72 A.3d 641 (Pa. Super. Ct. 2013)......................................................... 15

*Ticketmaster, LLC v. Ill. Union Ins. Co.*,
    524 F. App'x 329 (9th Cir. 2013)........................................................... 6

*Titan Indem. Co. v. Cameron*,
    2002 WL 1774059 (E.D. Pa. July 30, 2002), *aff'd*, 77 F. App'x 91 (3d Cir. 2003) ............... 15

*Virginia Mason Med. Ctr. v. Executive Risk Indemn, Inc.*,
    2007 WL 3473683(W.D. Wash. Nov. 14, 2007), *aff'd*, 331 F. App'x 473
    (9th Cir. 2009).............................................................................. 11-12, 13

*Washington Energy Co. v. Century Surety Co.*,
    407 F. Supp.2d 680 (W.D. Pa. 2005)...................................................... 14

*William Beaumont Hosp. v. Fed. Ins. Co.*,
    552 F. App'x 494 (6th Cir. 2014)...................................................... 12, 13

*William Beaumont Hosp. v. Fed. Ins. Co.*,
   2013 WL 992552 (E.D. Mich. Mar. 13, 2013), *aff'd*, 552 F. App'x 494
   (6th Cir. 2014) ................................................................................................... 9, 10

**Rules**

Fed. R. Civ. P. 6(d) ............................................................................................. 1

Fed. R. Civ. P. 72 ............................................................................................... 1

Fed. R. Civ. P. 72(a) .......................................................................................... 1

Fed. R. Civ. P. 72(b)(2) ...................................................................................... 1

LCvR 72.D .......................................................................................................... 1

**Other Authorities**

Appleman on Insurance Law & Practice § 5256 (1st ed.) ................................ 7

Couch on Insurance § 22:30 (3d ed. 2010) ....................................................... 3

Peter J. Kalis, Thomas M. Reiter & James R. Segerdahl, Policyholder's Guide to the Law
   of Insurance Coverage § 12.01[A] (2010) ...................................................... 7

## I.   PRELIMINARY STATEMENT

PNC filed suit against Defendants Houston Casualty Company ("HCC") and AXIS

Insurance Company ("AXIS") (collectively, the "Insurers") for coverage under the Financial

Institution Professional Liability coverage section of the Blended Executive Risk insurance

policies (the "Policies") PNC purchased from the Insurers.  PNC seeks indemnity for **Damages**[1]

and **Claims Expenses** paid to settle underlying class action litigation concerning its **Professional**

**Services** – specifically, the manner in which PNC posted electronic transactions and provided

overdraft protection services to its retail banking customers.

On May 21, 2014, Magistrate Judge Kelly issued a Report and Recommendation

("R&R") (ECF No. 61) in favor of granting PNC's Motion for Judgment on the Pleadings (ECF

No. 47) and denying the Insurers' Motion for Judgment on the Pleadings (ECF No. 50).  On

June 9, 2014, the Insurers filed Objections to the R&R (ECF No. 62).  On June 24, 2014, two

days prior to the date by which PNC was to file its Response to the Insurers' Objections,[2] the

Court issued a Memorandum Order (ECF No. 63) (the "Order") adopting in part and rejecting in

part Judge Kelly's R&R.

The District Court agrees with the R&R's finding that PNC met its burden of proving that

the underlying litigation falls within the Policies' insuring agreements.  Order at 2.  The District

Court further agrees that the burden is on the Insurers to prove that the Fee Exception to covered

---

[1]  All bolded, capitalized terms are defined in the Policies.  Unless otherwise defined herein, PNC hereby incorporates all defined terms as set forth in its Motion for Judgment on the Pleadings briefing (ECF Nos. 48, 54, 56) so as to be used for the same meaning herein.

[2]  Fed. R. Civ. P. 72(b)(2), LCvR 72.D, and the advisory committee notes to Fed. R. Civ. P. 72(a) demonstrate that PNC should have been afforded an opportunity to respond to the Insurers' Rule 72 Objections.  Under Fed. R. Civ. P 72(b)(2) and LCvR 72.D, PNC had 14 days to file a response in opposition to the Insurers' Objections, plus an additional 3 days pursuant to Fed. R. Civ. P. 6(d) because the Objections were sent by electronic means.  This time period is equivalent to the time period the Insurers had to file their objections under the same rules (*e.g.*, the 14-day period for the Insurers to file their Objections would have run on June 4, not June 9, absent the 3-day enlargement under Fed. R. Civ. P. 6(d)).  Accordingly, PNC's response date was June 26, 2014.

**Damages** eliminates coverage for PNC's settlement payments.  *Id.*  Also consistent with the R&R, the District Court finds that certain portions of the underlying settlements, including attorneys' fees, costs, and incentive fees, are covered **Damages**, and accordingly, PNC has incurred at least $30,306,158.63 in covered **Loss**.  *Id.* at 9, Section II(2)-(3).

However, the District Court rejects Judge Kelly's interpretation of the Fee Exception to **Damages** and instead finds that the Fee Exception excludes coverage for the **Damages** paid or payable to individual class members.  *Id.* at Section II(1).  The Order misapprehends Judge Kelly's interpretation of the Fee Exception and otherwise incorporates legally suspect arguments from the Insurers' Objections that Judge Kelly properly rejects as inconsistent with the terms of the Policies and Pennsylvania law.  PNC therefore respectfully asks the Court to reconsider subparagraph (1) of its Order, and enter an amended Order granting PNC's Motion for Judgment on the Pleadings in its entirety and denying the Defendants' Motion for Judgment on the Pleadings.[3]

## II.    LEGAL STANDARD

A court has broad discretion to grant a motion for reconsideration where there is a need to correct a clear error of law or fact or to prevent manifest injustice.  *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see also In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 438-39 (3d Cir. 2009).  Here, partial reconsideration of subparagraph (1) in the Order is necessary because the Court fails to apply the principles of Pennsylvania contract interpretation that it recognizes are controlling, and instead effectively rewrites the Fee Exception to insert new terms that do not appear in the Policies.  Further, although Judge Kelly agreed with PNC that it was not necessary to make a factual determination regarding whether the settlement constituted "fees" that were being "refunded" given the

---

[3]  PNC reserves any additional objections to other portions of the Court's Order.

language in the Policies' Personal Profit Exclusion mandating that such a factual determination could only be rendered by the court in the underlying action, the Court's conclusion that the Fee Exception need not be reconciled with the Personal Profit Exclusion improperly creates material issues of fact regarding the nature of the settlement payments, which the Court then proceeds to resolve on the basis of an incomplete record and in derogation of the Third Circuit's mandate that only a jury may resolve disputed factual issues. *See Brooks v. Kyler*, 204 F.3d 102, 109 (3d Cir. 2000); *Bragen v. Hudson County News Co.*, 278 F.2d 615, 618 (3d Cir. 1960).

## III.   ARGUMENT

### A.   The Order Rewrites The Fee Exception By Inserting New Terms While Simultaneously Failing To Give Effect To All Language Within The Exception.

Pennsylvania law requires a court to give effect to the express terms of an insurance contract and instructs that "each and every part of it must be taken into consideration and given effect." *Marcinak v. Southeastern Greene School Dist.*, 544 A.2d 1025, 1027 (Pa. Super. Ct. 1988). "Where an entire limitation of liability is contained in one sentence, it must be construed as a whole, not by separating one word or phrase from another." Couch on Insurance § 22:30 at 22-132 (3d ed. 2010). Further, a court may not "rewrite an insurance policy to include terms that the parties did not insert in their contract." *Petrochko v. Nationwide Mut. Ins. Co.*, 15 Pa. D. & C. 5th 312, 329 (Pa. Com. Pl. Aug. 27, 2010), *aff'd sub nom.,* 38 A.3d 917 (Pa. Super. Ct. 2011); *Blocker v. Aetna Cas. & Sur. Co.*, 332 A.2d 476, 478 (Pa. Super. Ct. 1975).

Contrary to these well-established canons of construction, the Order's interpretation of the Policies distorts the meaning of the Fee Exception to the definition of **Damages.** The intent of the Policy language is to exclude *only* those portions of **Damages** paid or payable *to an Insured*. *See* discussion at p. 4-5 *infra.* The Order, however, interprets the words "paid or payable to an **Insured**" to specify the person to whom the *fees* for **Professional Services**, rather

than the **Damages**, must be paid.  The Order also substitutes the words "***to each individual class member***" in place of "***to an Insured***," thereby transforming the Fee Exception from an exception applicable to certain categories of **Damages** otherwise payable to an ***Insured*** into an exception applicable to categories of **Damages** payable to ***non-insured claimants***.  The Order also effectively inserts the words "***reimbursement or refund of***" fees into the Fee Exception, expanding the scope of the exception beyond its express terms.

The express language of the Fee Exception to the definition of **Damages** reads as follows:

> **Damages** shall not include any fees, commissions, or charges for **Professional Services** paid or payable to an **Insured**.

The Order, however, treats the exception as if it excludes from coverage:

> ~~Damages shall not include any~~ ***reimbursement or refund of*** fees, commissions, or charges for **Professional Services** paid or payable ***to each individual class member*** ~~to an **Insured**~~.

*See* Order at 4 (wherein the Court states that "both settlement agreements were drafted to ***reimburse*** or ***refund class members*** with the overdraft fees that the ***class members*** had previously paid to PNC.  As such, the Court finds that there is no other way for the Court to construe the Fee Exception than to encompass the settlements at issue here.") (emphasis added).  The Order's interpretation is thus premised on language that does not appear in the Policies.

The Order's discussion of the Fee Exception ignores the fact that the exception, like all of the carve-outs from the definition of **Damages**, begins with the phrase "**Damages** shall not include. . ." The Order's interpretation substitutes the words "fees, commissions, or charges" for "**Damages**."  *See* Order at 4 ("those payments constitute a refund of 'fees…for **Professional Services** paid…to an **Insured**'").  This introductory phrase referring to **Damages** is critical, however, as the language "paid or payable to an **Insured**" is intended to carve out from coverage

only certain categories of *Damages* otherwise to be paid or payable *to an insured claimant*.
R&R at 21-22.  The Court thus mistakenly interprets the language "paid or payable to an
**Insured**" to specify to whom the *fees* for **Professional Services** must be paid.  Order at 4.

Other provisions of the Policies support PNC's, and the R&R's, interpretation of the Fee
Exception.  If the Fee Exception had been intended to carve out from coverage "fees…for
**Professional Services** paid…to an **Insured**," as the Order finds, the language "paid or payable
to an **Insured**" would not be necessary.  The definition of the term **Professional Services**
already contains a requirement that the fee for the **Professional Services** be paid to an **Insured**.
The Policies define **Professional Services** as services that an **Insured** performs, or has
performed on its behalf, "for a fee, commission or other consideration (or where a fee,
commission or other consideration would normally be received by the Insured)."  *See* JA-45 at
§ B(4)(O) (ECF No. 49-2 at 20).  The Order's interpretation of the Fee Exception renders the
words "paid or payable to an Insured" superfluous.  This violates the canon of Pennsylvania law
which prohibits a court from construing an insurance policy "in such a way as to render any part
of it useless and unnecessary."  *Mutual of Omaha Ins. Co. v. Bosses*, 237 A.2d 218, 220 (Pa.
1968). [4]  The Order's interpretation of the phrase "paid…to an **Insured**" to dictate the recipient
of the fees is not a reasonable or permissible one.

---

[4]  Under Pennsylvania law, a "construction that gives reasonable meaning to all of the contract's
provisions is preferred to one which leaves a portion of the writing useless or inexplicable."  *Gould, Inc.
v. Arkwright Mut. Ins. Co.*, 829 F. Supp. 722, 725 (M.D. Pa. 1993).  *See also Estate of Sanchez v.
Colonial Penn Ins.*, 532 A.2d 857, 860 (Pa. Super. Ct. 1987) ("A construction of an insurance policy
which entirely neutralizes one provision should not be adopted if the contract is susceptible of another
construction which gives effect to all of its provisions and is consistent with the general intent" of the
parties); *Mutual of Omaha Ins. Co.*, 237 A.2d at 220 (Pa. 1968) (it is a "cardinal principle of
interpretation that an insurance policy must be construed in such a manner as to give effect to all of its
provisions," and a court may not construe an insurance policy "in such a way as to render any part of it
useless and unnecessary"); *Abraxas Group, Inc. v. Guaranty Nat'l Ins. Co.*, 648 F. Supp. 304, 305 (W.D.
Pa. 1986) ("In interpreting the various clauses of an insurance contract, the court must give effect to all of
the various provisions reading the policy in its entirety").

Similarly, the Order inserts words into the Fee Exception that do not appear within its text. *First*, the Order effectively inserts the words "reimbursement" or "refund" in front of the word "fees," and then bases its coverage determination on the result of its factual analysis as to whether the settlement payments are a return of fees.  Order at 4.  Because the Fee Exception, as drafted, does not actually contain the words "reimbursement" or "refund", however, no such factual inquiry should be undertaken.[5]  *Second*, the Order determines that the Fee Exception carves out from **Damages** amounts paid or payable to ***individual class members***, not **Damages** paid or payable to an ***Insured***.  *Id.*  Again, however, the words "individual class members" do not appear in the Policies.

Thus, rather than apply the terms of the Fee Exception as written, the Order effectively creates a revised Fee Exception which vastly expands its scope.[6]  Adopting such an interpretation is clear error under Pennsylvania law.  *See, e.g.*, *401 Fourth St., Inc. v. Investors Ins. Grp.*, 823 A.2d 177, 179 (Pa. Super. Ct. 2003), *aff'd*, 879 A.2d 166 (Pa. 2005) ("it is not the trial court's responsibility to rewrite the policy to protect the insurer.  If [the insurer] wanted to limit its risk … it could easily have done so"); *Piekutowski v. Twp. of Plains*, 2012 WL 8666731, at *3 (Pa. Commw. Ct. Jan. 23, 2012) ("courts are not generally available to rewrite agreements or make up special provisions").  Pennsylvania law does not permit a court to rewrite an insurance policy.  *Petrochko*, 15 Pa. D. & C. 5th at 329; *see also Blocker*, 332 A.2d at 478.

---

[5]  Further, as discussed in Section B below, the Policy specifies elsewhere that only the court in the underlying action can determine whether **Damages** constitute a return of fees.

[6]  Although the Order recognizes that the language of the Fee Exception is "atypical" in that it excludes from coverage "a particular type of damages, as opposed to excluding coverage for a particular type of claim or dispute" (Order at 6, n.3), the modified Fee Exception created in the Order expands the Fee Exception so that its breadth approaches the reach of exclusions at issue in the cases the Order distinguishes.  *See, e.g.*, *First Community Bancshares v. St. Paul Mercury Ins. Co.*, No. 6:12-cv-00193, slip op. at 9-10 (W.D. Tex. Dec. 18, 2012); *Ticketmaster, LLC v. Ill. Union Ins. Co.*, 524 F. App'x 329, 330 (9th Cir. 2013).

Judge Kelly recognizes that PNC's interpretation of the Fee Exception is the only reasonable interpretation that gives effect to ***all*** of the language in the exception without rewriting the Policies to insert terms that the Insurers chose not to include when drafting the Policies.  R&R at 21-22.  The R&R finds that the Fee Exception explicitly speaks to those portions of **Damages** (not fees) that, but for the carve-out, would be payable to an **Insured** – *i.e.*, a first party loss.  R&R at 21.  As the R&R correctly noted, professional liability insurance may provide coverage for both third- and first-party loss, as the term **Insureds** includes corporate entities and natural person insureds who may utilize the policyholder's professional services.[7] *See, e.g.,* Appleman on Insurance Law & Practice § 5256 (1st ed.) (professional liability policies are designed to provide a "form of hybrid coverage" that "guards against losses arising to the insured, as well as liabilities arising on the part of the insured, by reason of errors or omissions on the part of its personnel"); Peter J. Kalis, Thomas M. Reiter & James R. Segerdahl, Policyholder's Guide to the Law of Insurance Coverage § 12.01[A] at 12-3 (2010); *Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo*, 845 P.2d 789, 791 (N.M. 1992).

If this Court adopts the interpretation recommended by the R&R, the Fee Exception, if applicable, could only ever carve out from coverage those settlement amounts paid or payable as **Damages** to ***Insured*** members of the settlement classes – namely, those directors, officers and employees of PNC who used PNC's Overdraft Coverage Services during the class period.  *Id.* Because these individuals were affirmatively eliminated from the settlement classes in *Trombley* and the MDL, however, no factual discovery is needed before this Court can find that PNC's settlement payments are covered **Damages**.  *See* JA-612 (ECF No. 49-20 at 9) (*Trombley*) and JA-804 (ECF No. 49-25 at 11) (MDL).

---

[7]  *See* JA-44-45 (ECF No. 49-2 at 19-20), wherein the Policies define the PNC corporate and natural person **Insureds** to generally include entities within PNC's corporate family and its directors, officers and employees.

**B.    The Order Erroneously Adopts An Interpretation That Creates An Irreconcilable Conflict Between The Fee Exception And The Personal Profit Exclusion.**

Both the Fee Exception and the Personal Profit Exclusion are carve outs from the

**Damages** or **Loss** that the Insurers would otherwise need to pay under the Policies. [8]  While the

Fee Exception uses the term "fees" and the Personal Profit Exclusion speaks of "profits" or

"remuneration," Judge Kelly clearly understood that for purposes of Financial Institution

Professional Liability coverage, "given the nature of a bank's business and its income," the terms

"fees," "profits" and "remuneration" are equivalent.  R&R at 22.

It is a fundamental precept of Pennsylvania insurance law that policy provisions dealing

with the same subject must be interpreted together and cannot be construed in isolation or in a

vacuum.  *Heebner v. Nationwide Ins. Enter.*, 818 F. Supp. 2d 853, 856 (E.D. Pa. 2011); *Sloan &*

*Co. v. Liberty Mut. Ins. Co.*, 2008 WL 3832519, at *2 (E.D. Pa. Aug. 15, 2008) ("A contract is to

be interpreted in a manner which gives meaning to all of its terms when read as an entirety, and

phrases are not to be considered in isolation but by a reading in harmony with the rest of the

contract").  While insurance policy exclusions can overlap, overlapping provisions should not be

construed to internally conflict.  *See, e.g., SRC Holding Corp. v. Exec. Risk Indemn., Inc.*,

545 F.3d 661, 669-70 (8th Cir. 2008) (irreconcilable conflict between overlapping exclusions

would create ambiguity in contract); *see also Butterfield v. Giuntoli*, 670 A.2d 646, 653 n. 9 (Pa.

Super. Ct. 1995).  As another district court succinctly stated, "[t]his illusory sleight-of-hand view

of policy 'coverage,' with one clause taking away what another promises to provide, is truly a

---

[8]  The Personal Profit Exclusion provides that "the Underwriter shall not be liable to make any payment for **Loss** (defined to include **Damages**) on account of a **Claim** brought about or contributed to in fact by any . . . profit or remuneration gained by any **Insured** to which such **Insured** is not legally entitled; *as determined by a final adjudication in the underlying action*."  (JA-47 at § 5(C)) (ECF No. 49-2 at 22) (emphasis added).  It is undisputed that the Personal Profit Exclusion cannot be construed to preclude coverage here, as there was no final adjudication in the underlying action that PNC must return fees.

position that only an insurer (and its lawyer) could embrace." *William Beaumont Hosp. v. Fed. Ins. Co.*, 2013 WL 992552, at *11 (E.D. Mich. Mar. 13, 2013), *aff'd*, 552 F. App'x 494 (6th Cir. 2014).

The Personal Profit Exclusion specifies that only the Court in an underlying action can determine in a final adjudication whether the Insurers must pay **Damages** consisting of a return of fees or other profit. The final adjudication language in the Personal Profit Exclusion would be meaningless, however, if the Fee Exception were interpreted to allow a different court to determine that **Damages** constituted a return of fees. In order to give effect to the Personal Profit Exclusion, therefore, and harmonize the two policy provisions that both treat payments of **Damages** involving a bank's profits, Judge Kelly agreed with PNC that this Court may not determine whether the *Trombley* and MDL settlements constitute "fees" that were "refunded." R&R at 22 ("The exclusion for unlawful profits would be superfluous if the Insurer's interpretation of the exception to 'damages' applied to third-party liability claims, because final adjudication would not be necessary to exclude all claims arising out of fees or loans payable to PNC"). This is entirely consistent with Pennsylvania law which requires that the specific provision in the Personal Profit Exclusion requiring the underlying court to decide whether **Damages** consist of a return of fees controls over the more general Fee Exception, which is silent on the issue. *PBS Coal, Inc. v. Hardhat Min., Inc.*, 632 A.2d 903, 906 (Pa. Super. Ct. 1993) ("where specific or exact terms seem to conflict with broader or more general terms, the former is more likely to express the meaning of the parties").

The R&R construes the exclusions in a manner that harmonizes and gives effect to both. By construing the Fee Exception to apply *only* with respect to **Damages** paid to an **Insured**, as discussed above, the exception has no application to third-party settlements which do not include

payments to insured claimants.  Critically, the R&R's interpretation does not require this Court to reach the issue of whether PNC's settlement payments constitute "fees," and therefore does not create a conflict between the Fee Exception and the Personal Profit Exclusion.

The Order, in contrast to the R&R, construes the Fee Exception and the Personal Profit Exception to create an internal conflict between the exclusions that cannot be reconciled under the Court's interpretation.  *First*, the Order's interpretation creates two conflicting provisions in the Policies that address when the Policies should pay **Damages** for a claim involving a fee to which PNC allegedly was not legally entitled: (i) the Fee Exception, which would allow the court in a coverage action to decide whether PNC's damages payments constitute a disgorgement of fees; and (ii) the Personal Profit Exclusion, which strictly reserves that decision to the court in the underlying action.  Construing the Fee Exclusion in a manner that creates such a conflict is clear error.  *See Butterfield*, 670 A.2d at 653 n.9; *William Beaumont Hosp.*, 2013 WL 992552, at *11;  *Scirex Corp. v. Fed. Ins. Co.*, 313 F.3d 841, 851 (3d Cir. 2002).

*Second*, the Order's finding that the Personal Profit Exclusion is not superfluous because it provides coverage for **Claims Expenses** effectively reduces coverage to an empty promise.  PNC paid approximately $4 million to HCC for $25 million in policy coverage which attaches only if PNC first pays **Loss** in excess of $25 million.  JA-28 (ECF No. 49-2).  Under the Court's reasoning, PNC could not receive value for its premium payment unless **Claims Expenses** first exceeded $25 million.  *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 905 (3d Cir. 1997) (internal quotations and citations omitted) (noting an insured "has a right to expect that it will receive something of comparable value in return for the premium paid").  Accordingly, such an interpretation would render the Policies of no real value and cannot be adopted.  *See Great N. Ins. Co. v. Greenwich Ins. Co.*, 2008 WL 2048354, at *5 (W.D. Pa. May 12, 2008) (Conti, J.)

(internal quotations and citations omitted) ("an insurer cannot avoid an illusory coverage problem by simply conceiving of a single hypothetical situation to which coverage would apply"); *Scirex Corp.*, 313 F.3d at 851 (where insurer's interpretation "would essentially render the policy's . . . protections illusory," the court found "[s]uch protection is no protection at all, and we will not reach that result when a reasonable alternative interpretation is present").

    **C.**    **The Court's Ruling That The *Trombley* And MDL Settlements Constitute A "Reimbursement" or "Refund" of "Fees" Is Procedurally Improper And Is Not Supported By The Record.**

    ***First***, the Court's ruling in subparagraph (1) of the Order is procedurally improper, as the Order's revised Fee Exception creates material issues of fact as to whether the settlement was (i) a "reimbursement" or "refund" of (ii) "fees." Although the Policy language dictates that the Court should never have addressed this issue in the first instance, the Court resolved these disputed issues of material fact, that it itself created, on an incomplete factual record, rather than allowing a jury to render the decision. *See Brooks*, 204 F.3d at 109 ("a disputed issue of material fact [is] for the trier of fact to resolve"); *see also Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). Even if the Court disagrees with Judge Kelly and PNC's conclusion that only the court in the underlying action was qualified to determine whether the Insurers were liable to pay **Damages** for any settlement involving the return of fees, Pennsylvania law and Third Circuit precedent requires the Court to allow a jury to determine the nature of the settlements. *Id*.

    ***Second***, even if the Court could reach this issue on the Insurers' Motion for Judgment on the Pleadings, which it cannot, the Court's conclusion is not supported by the record. The Order ignores undisputed evidence that the parties in the Checking Account Overdraft Litigation specifically determined that the settlement proceeds would be distributed without the need for any individual to prove actual damages. Instead, the Order conflates the means of distributing the settlements with the nature of the settlements themselves. *See Virginia Mason Med. Ctr. v.*

*Executive Risk Indemn, Inc.*, 2007 WL 3473683, at *3 (W.D. Wash. Nov. 14, 2007), *aff'd*, 331 F. App'x 473 (9th Cir. 2009) (a "restitution remedy is awarded at the conclusion of litigation once culpability is allocated, while a settlement is a negotiated bargain between two parties who have foregone the right to a finding of culpability"); *see also AT&T v. Clarendon Am. Ins. Co.*, 2008 WL 2583007, at *7 (Del. Super. Ct. Feb. 11, 2008) (an underlying settlement does not adjudicate anything, and a D&O insurance company cannot infer from a settlement agreement that damages were paid as a result of securities fraud).

Other courts have expressly rejected the approach adopted in the Order.  For example, in *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, 2011 WL 4543896, at *11 (S.D. Ohio Sept. 29, 2011), the court held that coverage for a class action settlement payment was not precluded by an exclusion for claims seeking benefits due, notwithstanding the parties' use of a calculated average savings from benefits to determine how the settlement should be distributed to class members.  *Id*.  The court noted that "[a]lthough this calculation on its face applies an estimation of Grange's 'savings' from the use of the software, it is clear that it was used as a negotiated method to help reach a settlement between Grange and the settlement class.  In effect, the 'savings' were used to estimate the settlement classes' damages."  *Id*. at *12.  A method of estimating damages for a common damages fund cannot be construed as conclusive evidence of the nature of the damages themselves.  *Id*; *see also William Beaumont Hosp. v. Fed. Ins. Co.*, 552 F. App'x 494, 500 (6th Cir. 2014).

Thus, the settlement payments to class members here are not tantamount to a return of "fees."  In the Checking Account Overdraft Litigation, the plaintiffs themselves admitted that there were sharply opposed positions on the appropriate methodology for establishing damages on a class-wide basis and on the amount of damages to be recovered.  JA-797 (ECF No. 49-25

at 4).  This was due, in large part, to the fact that individualized damages could not be calculated

absent an examination of each customer's account history and an analysis of the consequences of

non-payment or delayed payment of each customer's electronic transactions.  ECF No. 48 at 20.

In order to settle the contested claims without unduly burdening settlement class members, the

parties expressly agreed that the settlement agreements would not require any class member to

prove actual harm in order to recover.  JA-797 (ECF No. 49-25 at 4).

     Likewise, the parties' negotiated method for distributing settlement proceeds does not

reflect an agreement that the payments constituted a "reimbursement" or a "refund" of "fees,"

much less an adjudication of such.  Instead, the settlements reflect an agreement to settle

contested claims that sought equitable relief, actual damages, restitution, exemplary damages,

pre-judgment interest, plaintiffs' costs and fees, and other relief for PNC's alleged improper

rendering of its Overdraft Coverage Services.  JA-211-12 (ECF No. 49-7 at 42-43); JA-255-56

(ECF No. 49-8 at 44-45); JA-377-78 (ECF No. 49-11 at 29-30).  The method used to reach that

agreement is wholly irrelevant for purposes of determining coverage under the Policies.  *See*

*Chubb Custom Ins. Co.*, 2011 WL 4543896 at *11; *AT&T*, 2008 WL 2583007 at *7; *Virginia*

*Mason Med. Ctr.*, 2007 WL 3473683 at *3.  *See also William Beaumont Hosp.*, 552 F. App'x at

500.  Further, and in any event, it is unreasonable and illogical for a court to look at a complaint

seeking eight categories of damages and determine that the settlement of that action must

constitute one type of damages only.

    **D.**    **The Order Fails To Apply Well-Settled Pennsylvania Law Regarding The Interpretation Of Insurance Contracts.**

     The Order fails to adhere to two fundamental precepts that guide the interpretation of

insurance contracts in Pennsylvania, notwithstanding the fact that the Court recognizes the

applicability of such principles by citing them favorably within its Order.

*First*, while the Order properly cites canons of construction with respect to how coverage should apply when there are two competing interpretations of an insurance policy, the Order does not recognize the applicability of those canons in a situation where the Court's interpretation of the Fee Exception differed from its Magistrate Judge's interpretation of that same provision.  *See* Order at 2 (citing *Gardner State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) for the principle that policy language is ambiguous "if it is reasonably susceptible of different constructions" and "where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement").

Judge Kelly advances one construction of the Fee Exception, which supports the interpretation advanced by PNC and finds that the Fee Exception did not exclude the settlement payments from **Damages**.  R&R at 21-23.  The Order adopts a conflicting construction of the Fee Exception, which is applies to exclude coverage.  In situations where two jurists in the same Court examine the same insurance provision and reach different conclusions as to how it should be interpreted, settled precepts of Pennsylvania law require the District Court to then declare the provision ambiguous.  *See Globe Indem. Co. v. Mohenis Servs.*, 1998 WL 409026, at *5 (E.D. Pa. June 29, 1998) (ambiguity exists where "intelligent people, looking at the provisions within the context of the entire contract, could honestly differ as to their meaning"); *Washington Energy Co. v. Century Surety Co.*, 407 F. Supp.2d 680, 695 (W.D. Pa. 2005) (Ambrose, J.) ("The fact that the courts cannot agree as to when [an] exclusion should be applied to bar coverage is indicative of its ambiguous nature").

Once a court determines that a provision is ambiguous, it must then construe the ambiguous provision in favor of coverage and against the insurer.  *See*, *e.g.*, *Little v. MGIC Indem. Corp.*, 836 F.2d 789, 794 (3d Cir. 1987) (a court's "analysis of an allegedly ambiguous

insurance policy does not end with the determination that the insurer has set forth a reasonable interpretation of the policy … [a court] must go on to examine the interpretation offered by the insured" and if that "interpretation is also reasonable, the policy is ambiguous and must be construed against the insurer"); *Titan Indem. Co. v. Cameron*, 2002 WL 1774059, at *7 (E.D. Pa. July 30, 2002), *aff'd*, 77 F. App'x 91 (3d Cir. 2003) ("any reasonable interpretation offered by the insured…must control").  Here, however, the Court does not recognize the legal significance of its decision to read the Fee Exception in a manner different from its Magistrate Judge and PNC.  Such a decision should have caused the Court to enter judgment for PNC for the full amount of PNC's claim.

*Second*, the Order violates a precept concerning the interpretation of insurance contracts. Because the burden was on the Insurers to demonstrate that the Fee Exception precludes PNC's **Damages**, Pennsylvania law requires the court to narrowly construe the Fee Exception in favor of coverage.  *See Swarner v. Mutual Ben. Group*, 72 A.3d 641, 645 (Pa. Super. Ct. 2013). Again, the Order recognizes that "it is the insurer 'that bears the burden of establishing the applicability of an exclusion in an insurance contract, and exclusions are always strictly construed against the insurer and in favor of the insured.'"  Order at 2 (citing *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001)).  However, the District Court fails to adhere to this maxim when it adopts the Insurers' broad interpretation of the Fee Exception, notwithstanding that there is a narrower interpretation of the Fee Exception available that has been advanced by Judge Kelly and PNC.

## IV.   CONCLUSION

As Judge Kelly noted, the Insurers here issued Policies with broad coverage grants and narrow exclusions.  R&R at 23.  For the reasons set forth above, PNC respectfully requests that the Court follow the well-settled precepts of contract interpretation, as well as precedent from Pennsylvania courts, and reconsider and amend its June 24, 2014 Memorandum Order to grant PNC's Motion for Judgment on the Pleadings in its entirety and deny the Insurers' Motion for Judgment on the Pleadings.


Dated:  July 2, 2014

/s/ Courtney C.T. Horrigan
Douglas E. Cameron
Pa. I.D. No. 41644
Courtney C.T. Horrigan
Pa. I.D. No. 70427
Robert H. Owen
Pa. I.D. No. 91406
Caitlin R. Garber
Pa. I.D. No. 311321

Reed Smith LLP
(Firm I.D. No. 234)
225 Fifth Avenue
Pittsburgh, PA 15222
412-288-3131
Fax: 412-288-3063
dcameron@reedsmith.com
chorrigan@reedsmith.com

*Counsel for Plaintiffs The PNC Financial Services Group, Inc. and PNC Bank, N.A., Individually and as Successor In Interest to National City Bank*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2014, I electronically filed the foregoing Plaintiffs'
Memorandum of Law in Support of Plaintiffs' Motion for Partial Reconsideration of
Memorandum Order Dated June 24, 2014 via the Court's CM/ECF system, which will send
notification of such filing to the following:

Thomas P. McGinnis
Thomas, Thomas & Hafer
One Oxford Centre
301 Grant Street, Suite 1150
Pittsburgh, PA  15219
tmcginnis@tthlaw.com
*Local Counsel for Houston Casualty Company and*
*AXIS Insurance Company*

Douglas M. Mangel
Joseph A. Bailey III
Shipman & Goodwin LLP
1875 K Street NW, Suite 600
Washington, DC  20006-1251
dmangel@goodwin.com
jbailey@goodwin.com
*Counsel for Houston Casualty Company*

Jason P. Cronic
John E. Howell
Wiley Rein, LLP
1776 K. Street
Washington, DC  20006
jcronic@wileyrein.com
jhowell@wileyrein.com
*Counsel for AXIS Insurance Company*

/s/ Courtney C.T. Horrigan
Counsel for Plaintiff