**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE PNC FINANCIAL SERVICES, GROUP, INC, *et al*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 13-331 |
| v. | ) ) | Judge Cathy Bissoon |
| HOUSTON CASUALTY, COMPANY, *et al*, | ) ) | Magistrate Judge Maureen P. Kelly |
| Defendants. | ) | |

**MEMORANDUM ORDER**

**I. MEMORANDUM**

Currently pending before the Court is Plaintiffs' Motion for Reconsideration of the

Court's June 24, 2014 Order (Doc. 64).  After careful consideration of the arguments raised by

Plaintiffs in their motion, and for the reasons stated below, Plaintiffs' motion will be denied.

**PROCEDURAL BACKGROUND**[1]

On May 21, 2014, Magistrate Judge Kelly issued a Report and Recommendation (Doc.

61), recommending that Defendants' (hereinafter, the "Insurers'") Motion for Judgment on the

Pleadings (Doc. 50) be denied, and that Plaintiffs' (hereinafter, "PNC's") Motion for Judgment

on the Pleadings (Doc. 47) be granted.  The Insurers timely filed Objections (Doc. 62), and after

conducting a *de novo* review of the Record, the Court issued its June 24, 2014 Order (Doc. 63)

(hereinafter, the "Order") adopting the Report and Recommendation in part.  Specifically, the

---

[1] The facts regarding the underlying settlements and the insurance policies at issue have been extensively briefed by the parties, and are explained in detail in Part C of the Magistrate Judge's Report and Recommendation (Doc. 61).

Court adopted Parts A, B, and C of the Report, but disagreed with the Report's reading of the "Fee Exception" in the insurance policies.

The Court, in its Order, found that: (1) The portions of the <u>Trombley</u> and MDL settlements paid towards individual class members' claims fall under the Fee Exception to **Damages**; (2) The amount of **Damages** in the <u>Trombley</u> and MDL settlements, including attorneys' fees, costs, and incentive fees, amounted to at least $30,306,158.63; and (3) PNC had therefore paid **Damages** in connection with the <u>Trombley</u> and MDL settlements in an amount in excess of its $25 Million retention, and thus triggered coverage under the HCC Policy.  (Doc. 63 at 9).  As such, the Court granted both parties' motions (Docs. 47 & 50) in part, to the extent that they sought declarations consistent with those findings.

PNC has now filed a Motion for Reconsideration of the Court's June 24, 2014 Order (Doc. 64), and subsequently submitted a Notice of Supplemental Authority (Doc. 66), to provide the Court with a recent decision from the District of Minnesota that purportedly supports PNC's position.  The Insurers have filed a response in opposition thereto (Doc. 67).  Accordingly, PNC's Motion for Reconsideration (Doc. 64) is now ripe for disposition.

<u>**ANALYSIS**</u>

As a preliminary matter, the Court recognizes that, because the Insurers filed their objections electronically, PNC was entitled to three additional days to file its response to the objections, pursuant to Rule 6(d) of the Federal Rules of Civil Procedure.  Accordingly, the Court will examine the arguments in PNC's Motion for Reconsideration as if they were made in response to the Insurers' Objections, and will not hold PNC to the strict motion for reconsideration standards.  However, as described more fully below, PNC's arguments fail to persuade the Court to alter its Order.

2

## A. "Rewriting" the Fee Exception

First, PNC argues that the Order "rewrites the fee exception by inserting new terms while simultaneously failing to give effect to all language within the exception."  (Doc. 65 at 3).  The Fee Exception reads as follows:

> **Damages** shall not include any ... fees, commissions or charges for **Professional Services** paid or payable to an **Insured**;

(Doc. 1-1 at 18).  PNC argues that the Court rewrote the fee exception in the following manner:

> ~~Damages shall not include any~~ ***reimbursement or refund of*** fees, commissions or charges for **Professional Services** paid or payable ***to each individual class member*** ~~to an~~ **~~Insured~~**."

(Doc. 65 at 4).

To support its argument, PNC attempts to create ambiguity in the policies by asserting an entirely new interpretation of the Fee Exception:  that "the language 'paid or payable to an **Insured**' is intended to carve out from coverage only certain categories of ***Damages*** otherwise to be paid or payable to an ***insured claimant***."  Id. at 4-5.  PNC argues that the Court "mistakenly interprets the language "paid or payable to an **Insured** to specify to whom the ***fees*** for **Professional Services** must be paid," rather than to whom the ***Damages*** are paid.  Id. at 5.  As such, PNC argues that the only time this exclusion could apply in this situation is if there were any **Insured** members in the Trombley or MDL classes, and because the settlements explicitly precluded such individuals from being class members, the Fee Exception is inapplicable here. Id. at 7.

This argument is a variation of the Magistrate Judge's determination that the Fee Exception was designed to only apply to first-party losses,[2] and is directly contrary to PNC's

---

[2] The Magistrate Judge found that the Fee Exception was "intended to exclude from coverage *first-party* losses sustained by PNC which constitute fees ... 'paid or payable' to PNC."  R&R (Doc. 63) at 3.  The Court disagreed,

position in its original briefing.  Indeed, throughout this entire litigation, PNC has asserted that the language "paid or payable to an **Insured**" indicated to whom the "fees … for **Professional Services**" were originally paid.  See Doc. 54 at 8 ("… under PNC's construct, the 'Fee Exception' would apply if there was a final adjudication of liability that would *require the repayment of fees*.") (emphasis added); Doc. 48 at 16 (arguing that the Fee Exception does not apply because "there was no final adjudication in the Checking Account Overdraft Litigation that PNC *must pay 'fees, commissions or charges' … to the class plaintiffs*") (emphasis added).

However, when viewing the policies as a whole, the Fee Exception is simply not reasonably susceptible to PNC's new, narrower interpretation.  See Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am., 581 F.Supp.2d 677, 690 (W.D. Pa. 2008) ("[I]n construing the terms of an insurance policy, the court must read the policy in its entirety, in a manner that gives effect to all of the policy language if at all possible.").  While the policies define the term "**Insured**" to mean both the **Company**, and natural persons, such as employees or officers of the **Company**, the definition also includes the qualifier: "*while acting in their capacity as such on behalf of the **Company***."  (Doc. 1-1 at 18-19) (emphasis added).  As such, an employee that is receiving **Damages** for a **Claim** in the form of "fees, commissions or charges for **Professional Services**," (here, fees for overdraft services) would *not* be acting within his or her capacity as an employee, or acting on behalf of the **Company**.  Instead, the employee would be acting as a

---

and found that the Fee Exception was not reasonably susceptible to this interpretation, since first-party losses were already precluded from coverage under the policies.  (Doc. 63 at 3).  Specifically, the policies provided that the Underwriter would pay "all Loss for which the ***Insured** becomes legally obligated to pay* on account of any **Claim** … for a **Wrongful Act**." (Doc. 1-1 at 16) (emphasis added).  PNC now takes a variation of the Magistrate Judge's interpretation, by envisioning a scenario where an **Insured** is both the party that is *legally obligated to pay* **Damages**, and the party that *receives **Damages*** in the underlying action.

**Customer**.[3]  Moreover, PNC has not provided, and the Court cannot envision, any other circumstance in which PNC would become legally obligated to pay "fees, commissions or charges for **Professional Services**" as **Damages** "to an **Insured**."  Indeed, even if the term "commissions" could somehow be construed as a form of compensation that PNC owed a natural person **Insured** for rendering **Professional Services**, such commissions are already covered under a different exception.[4]  As such, reading the Fee Exception under PNC's new, narrower interpretation would effectively render the entire exception superfluous.

Further, there is no indication that the parties intended the Fee Exception to apply in such a limited situation, or what purpose this exception would possibly serve.  To the contrary, at least one other court has recognized that excluding coverage for a bank's reimbursement of "fees commissions or charges for **Professional Services**" would prevent a bank from recouping fees that it was accused of "wrongfully or excessively charging its customers."  Fidelity Bank v. Chartis Specialty Ins. Co., 1:12-CV-4259-RWS, 2013 WL 4039414, at *4 (N.D. Ga. Aug. 7, 2013) (interpreting a similar fee exception in an insurance policy).[5]

---

[3] **Customer** is defined as "any person or entity to whom or for whom, or on behalf of, or for the benefit of, an **Insured** (or any other person or entity for whose acts, errors or omissions the **Insured** is or is alleged to be legally responsible) provides services or benefits." (Doc. 1-1 at 18).

[4] A different exception provides that "**Damages** shall not include any … salaries or commissions of any **Insured**." (Doc. 1-1 at 18).

[5] In Fidelity Bank v. Chartis Specialty Ins. Co., 2013 WL 4039414 (N.D. Ga. Aug. 7, 2013), a bank settled a lawsuit that dealt with a dispute regarding overdraft fees, and then brought an action against its insurer to recover its loss. The Court found that the settlements were excluded by a provision precluding coverage for "any payment for Loss in connection with any Claim made against any Insured … alleging, arising out of, based upon or attributable to, directly or indirectly, any dispute involving *fees, commissions or other charges for any Professional Services* rendered or required to be rendered by the Insured, or that portion of any settlement or award representing an amount equal to such fees, commissions or other compensations…"  Id. at *2.  In doing so, the Court noted that this exclusion was intended to preclude coverage for any "amounts that [the bank] was accused of wrongfully or excessively charging its customers."  Id. at *4.

While PNC argues that the Court's interpretation of the Fee Exception renders the words "paid or payable to an **Insured**" superfluous, the Court finds that these words clarify to whom the fees for **Professional Services** were *originally paid*.  As the Insurers note in their Brief in Opposition (Doc. 67), the policies define **Professional Services** as the following:

> (1) services performed by the **Insured** (<u>or by any other person or entity for whose acts, errors or omissions the Insured is or is alleged to be legally responsible</u>) for, for the benefit of, or on behalf of a **Customer** or potential **Customer** of the **Insured** for a fee, commission or other consideration (or where a fee, commission or other consideration would normally be received by the **Insured**); and

> (2) Sponsored Plan Services.

(Doc. 1-1 at 19) (emphasis added).  Therefore, there could be rare situations in which the fees for **Professional Services** were originally paid to someone other than the **Insured**, namely, to a person for whose acts the **Insured** is alleged is to be legally responsible. In those situations, the Fee Exception would not preclude coverage.  As such, the Court's interpretation of the exception does not render the language "paid or payable to an **Insured**" superfluous.

Therefore, contrary to PNC's argument, the Court did not "rewrite" the Fee Exception. The policies define the term **Damages** to mean a "judgment, award, surcharge or settlement as a result of any **Claim**…"  Moreover, the policies provide that the Underwriter is only obligated to pay **Loss** (defined as **Claims Expenses** and **Damages**) "that the **Insured** becomes legally obligated to pay on account of any **Claim** … for a **Wrongful Act**." (Doc. 1-1 at 16, 19). Therefore, in order to be covered under the policies, the **Insured** must become legally obligated to pay **Damages** in the form of a "judgment, award, surcharge, or settlement."  Here, PNC, the **Insured**, as part of the <u>Trombley</u> and MDL actions, became legally obligated to pay **Damages** (in the form of a settlement) to individual class members.  Because the term "paid or payable to

6

an **Insured**" indicates to whom the fees for **Professional Services** were paid, the Court correctly indicated that the portion of **Damages** (the settlement) that constituted "fees … for **Professional Services**" that were being paid to the individual class members were precluded from coverage. Moreover, because PNC is paying these class members "fees" that such class members originally paid to PNC, an **Insured**, for **Professional Services**, the Court correctly referred to these settlement payments as "reimbursements" or "refunds" of such fees.[6]

### B. An Irreconcilable Conflict

PNC next argues that the Order adopts an irreconcilable conflict between the fee exception and the personal profit exclusion. (Doc. 65 at 8). In doing so, PNC asserts the same arguments that it made in its original briefing: that interpreting the Fee Exception to apply here would render the Personal Profit Exclusion superfluous. The Court has already considered and rejected this argument in its Order, and PNC's re-assertion of those same arguments does not alter the Court's decision. (Doc. 64 at 5).

PNC, adopting a variation of the Magistrate Judge's position, also argues that the Order's interpretation of the policy would effectively reduce coverage to an empty promise. (Doc. 65 at 10). A policy is considered illusory only where it "would not pay benefits under any reasonably expected set of circumstances." ACE Capital Ltd. v. Morgan Waldon Ins. Mgmt., LLC, 832 F.Supp.2d 554, 572 (W.D. Pa. 2011) (internal citations omitted). Therefore, an insurance policy it is not illusory "simply because of a potentially wide exclusion." Id. Here, the Court's interpretation of the Fee Exception does not render the policy illusory. Even if PNC obtains the

---

[6] Indeed, PNC originally argued that the "'Fee Exception' would apply if there was a final adjudication of liability that would require the *repayment* of fees." (Doc. 54 at 8) (emphasis added). In addition, under PNC's new interpretation of the Fee Exception, the terms "refund" or "reimbursement" would still properly describe the **Damages** that were being paid to the "**Insured** claimants," as those "**Insured** claimants" (i.e. employees) would have originally paid those fees to PNC.

majority of its profit from "fees, commissions or charges for **Professional Services**," it does not necessarily follow that all lawsuits against PNC would be for a <u>recovery</u> of such fees, commissions or charges, rather than some other type of damages.  Even in this case, the Court's interpretation of the policy still allows PNC to obtain coverage for, or count towards its $25 Million retention, its **Claims Expenses**,[7] as well as the portion of the settlements that constitute attorney's fees and costs, which total over $30 million.

### C. The Determination that the Settlements Fell Under the Fee Exception

Third, PNC takes issue with the Court's determination that the <u>Trombley</u> and MDL settlements constituted a "reimbursement" or "refund" of "fees" paid to PNC, the **Insured**.  (Doc. 65 at 11).  Specifically, PNC argues that the Court's interpretation of the Fee Exception creates a material issue of fact, and that Pennsylvania law requires the jury to determine the nature of settlements.  First, this argument is contrary to PNC's position in its original briefing, as PNC's Motion for Judgment on the Pleadings specifically asked the Court to determine whether the settlements constituted "**Damages**" and "**Loss**" as those terms were defined in the policies. (Doc. 47 at 21).  Moreover, "[u]nder Pennsylvania law, the interpretation of an insurance contract is a question of law for the Court to decide."  <u>Fed. Ins. Co. v. KDW Restructuring & Liquidation Servs., LLC</u>, 889 F.Supp.2d 694, 697 (M.D. Pa. 2012); <u>see also</u> <u>Cont'l Cas. Co. v. Cnty. of Chester</u>, 244 F.Supp.2d 403, 407 (E.D. Pa. 2003) ("Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for

---

[7] **Claims Expenses** means "reasonable legal fees and expenses incurred in the defense or investigation of any **Claim**…" (Doc. 1-1 at 17).

summary judgment in a declaratory judgment action.").  As such, the Court properly determined that a portion of the settlements here were excluded under the policies.[8]

### D. Application of Pennsylvania Law

Fourth, PNC argues that the Court failed to apply well-settled Pennsylvania law regarding the interpretation of insurance contracts. (Doc. 65 at 13-14).  Specifically, PNC urges that because the Court interpreted the policies differently than PNC and the Magistrate Judge, the provision must be ambiguous, and therefore must be construed in favor of PNC, as the insured. Moreover, PNC argues that Pennsylvania law requires the Court to narrowly construe the exception in favor of coverage, and therefore the Court erred by adopting the Insurers' broad interpretation, rather than the more narrow interpretation offered by the Magistrate Judge and PNC.

The Court recognizes that "where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement."  Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983).  However, in order to be ambiguous, the contractual language must be "reasonably susceptible of different constructions and capable of being understood in more than one sense." Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986).  "Disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous."  Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 419 (3d Cir. 2011) (applying Pennsylvania law).  Therefore, "where there is only one reasonable interpretation of a contract,

---

[8] PNC also goes on to argue that, even if the Court could reach this issue, the settlements do not constitute "fees." (Doc. 65 at 12).  However, PNC makes identical arguments that it already asserted in its original briefing, and the Court rejected these same arguments in its Order. (Doc. 63 at 4-5).

that interpretation controls because straightforward language in an insurance policy should be given its natural meaning." Id. (internal citations omitted).

Here, as described above, the Court found the Magistrate Judge's reading of the Fee Exception, and now PNC's new, narrower interpretation of the exception to be unreasonable. As such, because the Court's interpretation of the Fee Exception is the *only* reasonable interpretation, the exception is not ambiguous, and the Court must apply the straightforward language to exclude coverage of a portion of the Trombley and MDL settlements.

### E. Supplemental Authority

Finally, PNC provided the Court with a copy of the recent decision in U.S. Bank v. Indian Harbor Ins. Co., Case No. 12-cv-3175, (D. Minn. July 3, 2014), which PNC argues provides additional support for its interpretation of the insurance policies. U.S. Bank dealt with insurance coverage of a bank's settlement in a similar overdraft fee action. In that case, the court found that the settlements were covered under the terms of the insurance policy, and no exclusions applied. While PNC argues that this case provides additional support for its argument, the Court disagrees. First, the case is in the District of Minnesota, and therefore is not controlling. Moreover, the case did not apply Pennsylvania law. Finally, and most importantly, while the policy in U.S. Bank had a similar Loan/Credit Exception, it did not have a similar Fee Exception, which the Court found to be the applicable exclusion here. Therefore, the U.S. Bank decision does not alter the Court's decision in this case.

### CONCLUSION

Contrary to PNC's arguments, the Court's Order did not rewrite the Fee Exception, nor does it create an irreconcilable conflict between the Fee Exception and the Personal Profit Exclusion. Moreover, the Order correctly found that at least a portion of the settlements were

excluded from coverage under the Fee Exception.  In doing so, the Court properly applied Pennsylvania law regarding the interpretation of insurance policies.  Lastly, the recent decision in U.S. Bank does not undermine the Court's position.    Accordingly, PNC's Motion for Reconsideration (Doc. 64) will be denied.

## II. ORDER

Consistent with the foregoing, PNC's Motion for Reconsideration (**Doc. 64**) is hereby **DENIED**.

IT IS SO ORDERED.


July 28, 2014                                    s/Cathy Bissoon_____
                                                 Cathy Bissoon
                                                 United States District Judge

cc (via ECF email notification):

All Counsel of Record